*10*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

TAKASHI TOYOKUNI,
KEN FUNASAKI,
KAZUNOBU TSUNEKAWA, AND
TOMIYA ITAKURA

    Defendants.
_____/

Case:2:14-cr-20559
Judge: Rosen, Gerald E.
MJ: Komives, Paul J.
Filed: 09-18-2014 At 01:13 PM
INDI USA V TAKASHI TOYOKUNI, ET AL

Violation:   15 U.S.C. § 1
(Conspiracy to Restrain Trade)

## INDICTMENT

THE GRAND JURY CHARGES:

### The Defendants and Co-conspirators

1. The following individuals are hereby indicted and made defendants on the charge stated below in this Indictment (collectively "the Defendants"):

    (a) TAKASHI TOYOKUNI;

    (b) KEN FUNASAKI;

    (c) KAZUNOBU TSUNEKAWA; and

    (d) TOMIYA ITAKURA

2. Hitachi Automotive Systems Ltd. is a corporation organized and existing under the laws of Japan with its principal place of business in Tokyo, Japan. Hitachi Automotive Systems Ltd.'s other related entities are its affiliate Hitachi Automotive Systems Americas, Inc., Hitachi Automotive Systems Group of Hitachi, Ltd., as it existed prior to July 1, 2009, the former Hitachi Unisia Automotive, Ltd., and the former Tokico, Ltd. (collectively, "Hitachi Automotive").

3. Hitachi Automotive is engaged in the business of manufacturing and selling various automotive parts, including starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems, electronic throttle bodies, ignition coils, and inverters and/or motor generators, to automobile manufacturers such as, depending on the automotive product, Ford Motor Company ("Ford"), General Motors LLC ("GM"), Nissan Motor Company, Ltd. ("Nissan"), Toyota Motor Corporation ("Toyota"), Honda Motor Company, Ltd. ("Honda"), and others, and certain of their subsidiaries ("Automobile Manufacturers") in the United States and elsewhere.

4. During the period covered by this Indictment, TOYOKUNI was employed by Hitachi Automotive in the United States and Japan. As of 2000, TOYOKUNI was employed by Hitachi Automotive Products Americas, Inc. in Farmington Hills, Michigan as a President's Staff Member. TOYOKUNI returned to Japan in 2001 and was employed a manager in the Business Planning Department, and then as a director of the Business Planning Department beginning in 2004. TOYOKUNI worked in the Business Planning Department until April 2008 when he transferred to Hitachi Auto Parts and Services. TOYOKUNI remained in that position throughout the remainder of the period covered by this Indictment..

5. During the period covered by this Indictment, FUNASAKI was employed by Hitachi Automotive in the United States and Japan. FUNASAKI was employed as a manager in the Business Planning Department, and then in April 2001, as a director of the Business Planning Department. Beginning in 2005, FUNASAKI was employed by Hitachi Automotive Systems Americas, Inc. in Farmington Hills, Michigan as Executive Vice President and General Manager, and then in 2006, as President of Hitachi Automotive Systems Americas, Inc. FUNASAKI remained in that position throughout the remainder of the period covered by this Indictment.

6. During the period covered by this Indictment, TSUNEKAWA was employed by Hitachi Automotive in the United States and Japan. TSUNEKAWA served as an assistant manager in the Business Planning Department, then in April 2003 as a manager in the Business Planning Department. Beginning in 2005, TSUNEKAWA was employed by Hitachi Automotive Systems Americas, Inc. in Farmington Hills, Michigan as a President's Staff Member. Beginning in 2009, TSUNEKAWA was employed by Hitachi Automotive in Japan as Chief Project Manager. TSUNEKAWA remained in that position throughout the remainder of the period covered by this Indictment.

7. During the period covered by this Indictment, ITAKURA was employed by Hitachi Automotive in Japan and elsewhere. Beginning in 2007, ITAKURA was employed as Director of the Engine Management Systems Unit within the Business Planning Department, and then as General Manager of the Business Planning Department. ITAKURA remained in that position throughout the remainder of the period covered by this Indictment.

8. Various corporations and individuals, not made defendants in this Count, participated as co-conspirators in the offense charged in this Count and performed acts and made statements in furtherance of it.

9. Whenever in this Count reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

### Background of the Offense

10. During the period covered by this Indictment, the Defendants and other co-conspirators at Hitachi Automotive and certain other automotive parts suppliers, supplied certain

automotive parts, including starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems, electronic throttle bodies, ignition coils, and inverters and/or motor generators to certain Automobile Manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere. Hitachi Automotive manufactured certain automotive parts subject to this conspiracy in the United States. Hitachi Automotive and certain other automotive parts suppliers supplied automotive parts: (a) in the United States and elsewhere for installation in vehicles manufactured and sold in the United States (b) in Japan and elsewhere for import into the United States and installation in vehicles manufactured and sold in the United States; and (c) in Japan and elsewhere for installation in vehicles manufactured in Japan and elsewhere for import into and sale in the United States.

11. Starter motors are small electric motors used in starting internal combustion engines.

12. Alternators are electromechanical devices that generate an electric current while engines are in operation.

13. Air flow meters (also known as air flow sensors) measure the volume of air flowing into engines.

14. Valve timing control devices (also know a variable valve timers or variable cam timers) control the timing of engine valves' operation, and include the VTC actuator and/or solenoid valve.

15. Fuel injection systems admit fuel or a fuel/air mixture into engine cylinders, and may include injectors, high pressure pumps, rail assemblies, feed lines and other components sold as a unitary system. Fuel injection systems can also be sold as part of a broader system,

such as an engine management system, or as separate components, such as the injectors, feed lines, high pressure pumps, and/or rail assemblies.

16. Electronic throttle bodies control the amount of air flowing into engines.

17. Ignition coils are part of the fuel ignition system and release electric energy to ignite the fuel mixture.

18. When purchasing automotive parts, automobile manufacturers typically issue Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model specific parts. Automotive parts suppliers submit quotations, or bids, to the automobile manufacturers in response to RFQs, and the automobile manufacturers may award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately two to three years prior to the start of production. Automobile manufacturers procure parts for U.S.-manufactured vehicles in the United States and elsewhere.

**Conspiracy to Restrain Trade**

19. Beginning at least as early as January 2000, and continuing until on or about February 2010, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan and elsewhere, Hitachi Automotive and other co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate the supply of, rig bids for, and fix, stabilize, and maintain the prices of, automotive parts sold to Automobile Manufacturers in the United States and elsewhere. Defendants TOYOKUNI and FUNASAKI participated in this conspiracy from at least as early as 2000, and continuing until on or about February 2010. Defendant TSUNEKAWA participated in the conspiracy from at least as early as 2003, and continuing until

on or about February 2010. Defendant ITAKURA participated in the conspiracy from at least as early as January 2007, and continuing until on or about February 2010. The combination and conspiracy engaged in by the Defendants and other co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. This combination and conspiracy involved interstate trade and commerce and import trade and commerce.

20. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendants and other co-conspirators, the substantial terms of which were to allocate the supply of, rig bids for, and fix, stabilize, and maintain the prices of, certain automotive products, including starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems, electronic throttle bodies, ignition coils, inverters and/or motor generators sold to Automobile Manufacturers in the United States and elsewhere.

**Manner and Means of the Conspiracy**

21. For purposes of forming and carrying out the charged combination and conspiracy, the Defendants and other co-conspirators did those things that they combined and conspired to do, including, among other things:

    a. participating in, and directing, authorizing, or consenting to the participation of subordinate employees in, meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to Automobile Manufacturers in the United States and elsewhere;

b.  agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to Automobile Manufacturers in the United States and elsewhere;

c.  agreeing, during those meetings, conversations, and communications, to allocate the supply of automotive parts sold to Automobile Manufacturers in the United States and elsewhere;

d.  approving collusive and noncompetitive prices agreed upon by subordinates during those meetings, conversations, and communications in the United States and elsewhere;

e.  submitting bids, price quotations, and price adjustments to Automobile Manufacturers in the United States and elsewhere in accordance with the agreements reached;

f.  selling automotive parts to Automobile Manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

g.  accepting payment for automotive parts sold to Automobile Manufacturers in the United States and elsewhere at collusive and noncompetitive prices; and

h.  employing measures to keep their conduct secret, including using code names and instructing recipients to destroy documents and emails containing conspiratorial communications.

## Trade and Commerce

22. During the period covered by this Count, the Defendants and other co-conspirators sold substantial quantities of automotive parts to Automotive Manufacturers in the United States and elsewhere. Automotive parts were manufactured in the United States and

shipped within the United States from other states, and manufactured outside the United States and shipped to the United States, all in a continuous and uninterrupted flow of interstate and import trade and commerce. In addition, substantial quantities of equipment and supplies necessary to the production and distribution of automotive parts by Hitachi Automotive, and its co-conspirators, as well as payments for automotive parts sold by Hitachi Automotive, and its co-conspirators, traveled in interstate and import trade and commerce. The business activities of the Defendants and other co-conspirators in connection with the production and sale of automotive parts that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate and import trade and commerce.

## Jurisdiction and Venue

23. The combination and conspiracy charged in this Count was carried out, at least in part, in the Eastern District of Michigan and continued within the five years preceding the filing of this Indictment.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

A TRUE BILL.

s/ Grand Jury Foreperson          Dated: _____
Grand Jury Foreperson


s/ Brent C. Snyder                        s/ Lisa M. Phelan
Brent C. Snyder                           Lisa M. Phelan
Deputy Assistant Attorney General         Chief, Washington Criminal I Section
Antitrust Division                        Antitrust Division
United States Department of Justice       United States Department of Justice

s/ Marvin N. Price, Jr.                   s/ Mark C. Grundvig
Marvin N. Price, Jr.                      Mark C. Grundvig
Director of Criminal Enforcement          Rebecca D. Ryan
Antitrust Division                        Eric M. Meiring
United States Department of Justice       Diana Kane
                                          Jason Jones
                                          Washington Criminal I Section
                                          Antitrust Division
                                          United States Department of Justice
                                          450 5th St. NW, Suite 11300
                                          Washington, DC 20530
                                          (202) 305-1878
                                          Mark.Grundvig@usdoj.gov

Case: 2:14-cr-20559
Judge: Rosen, Gerald E.
MJ: Komives, Paul J.
Filed: 09-18-2014 At 01:13 PM
INDI USA V TAKASHI TOYOKUNI, ET AL

| United States District Court Eastern District of Michigan | **Criminal Case Cover** |
|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

## Reassignment/Recusal Information
This matter was opened in the USAO prior to August 15, 2008  [ ]

| **Companion Case Information** | Companion Case Number: 13-cr-20707 |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: George Caram Steeh |
| ☒ Yes          ☐ No | AUSA's Initials: |

Case Title: USA v. TAKASHI TOYOKUNI, et al.,

County where offense occurred: Wayne County and Elsewhere

Check One:    ☒ Felony          ☐ Misdemeanor          ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____  **Judge:** _____

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 18, 2014
Date

ERIC M. MEIRING
Trial Attorney
U.S. Department of Justice, Antitrust Division
450 5th Street, N.W., Suite 11300
Washington, D.C. 20530-0001
202-598-2322

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.    04/13