UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:14-cr-20559 |
| | ) | |
| v. | ) | Filed |
| | ) | |
| TAKASHI TOYOKUNI, | ) | Violation: 15 U.S.C. § 1 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLEA AGREEMENT

The United States of America and Takashi Toyokuni ("defendant") hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1.    The defendant understands his rights:

    (a)    to be represented by an attorney;

    (b)    to be charged by Indictment;

    (c)    as a citizen and resident of Japan, to decline to accept service of the Summons in this case, and to contest the jurisdiction of the United States to prosecute this case against him in the United States District Court for the Eastern District of Michigan;

    (d)    to plead not guilty to any criminal charge brought against him;

    (e)    to have a trial by jury, at which he would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for him to be found guilty;

1

(f)     to confront and cross-examine witnesses against him and to

subpoena witnesses in his defense at trial;

(g)     not to be compelled to incriminate himself;

(h)     to appeal his conviction, if he is found guilty; and

(i)      to appeal the imposition of sentence against him.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.      The defendant knowingly and voluntarily waives the rights set out in Paragraph

1(b)-(h) above.  The defendant also knowingly and voluntarily waives the right to file any

appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal

under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2241 or 2255, that challenges the

sentence imposed by the Court if that sentence is consistent with or below the recommended

sentence in Paragraph 14 of this Plea Agreement, regardless of how the sentence is determined

by the Court.  This agreement does not affect the rights or obligations of the United States as set

forth in 18 U.S.C. § 3742(b)-(c).  Nothing in this paragraph, however, will act as a bar to the

defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack

respecting claims of ineffective assistance of counsel or prosecutorial misconduct.  The

defendant agrees that there is currently no known evidence of ineffective assistance of counsel or

prosecutorial misconduct.  Consistent with Fed. R. Crim. P. 11(b)(1)(O), the defendant

recognizes that if he is not a citizen of the United States pleading guilty may have consequences

with respect to his immigration status, including removal from the United States, denial of

citizenship, and denial of admission to the United States in the future.  Under federal law, a broad

range of crimes are removable offenses, including the offense(s) to which the defendant is

pleading guilty.

2

3.      The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to the criminal charge contained in the Indictment and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below. The United States agrees that at the arraignment, it will stipulate to the release of the defendant on his personal recognizance, pursuant to 18 U.S.C. § 3142, pending the sentencing hearing in this case.

## FACTUAL BASIS FOR OFFENSE CHARGED

4.      Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)      For purposes of this Plea Agreement, the "relevant period" of the conspiracy is that period from at least as early as January 2000 through February 2010. From January 2000 to April 2008, the defendant was employed by Hitachi Automotive Systems, Ltd. ("Hitachi Automotive")[1], an entity organized and existing under the laws of Japan and with its principal place of business in Tokyo, Japan, as, among other positions, a manager in the Business Planning Department beginning in 2001, then as a director in the Business Planning Department beginning in 2004. In April 2008, the defendant left Hitachi Automotive and became a board director and the Department Manager in the Business Integration Division of Hitachi Mobile Co., which became Hitachi Auto Parts & Service Co., Ltd. in April 2009. During the relevant period, Hitachi Automotive was a manufacturer of various automotive parts and was engaged in the sale of these automotive parts in the United States and elsewhere. For the purposes of this Plea Agreement, "automotive parts" is defined as starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems, electronic throttle bodies,

---

[1] For purposes of this Plea Agreement, Hitachi Automotive includes related entities, Hitachi Automotive Systems Americas, Inc., the former Hitachi Automotive Systems Group of Hitachi, Ltd., as it existed prior to July 1, 2009, the former Hitachi Unisia Automotive, Ltd., and the former Tokico Ltd.

3

ignition coils, inverters, and motor generators. From January 2000 to April 2008, the defendant was involved in the sale of and had responsibility over starter motors and alternators. Starter motors are small electric motors used in starting internal combustion engines. Alternators are electromechanical devices that generate an electric current while engines are in operation. During the relevant period, Hitachi Automotive's sales of starter motors to General Motors Company ("GM") and Nissan Motor Company, Ltd. ("Nissan"); and alternators to Nissan, together with sales to certain of their subsidiaries, affiliates and suppliers in the United States and elsewhere totaled more than $100 million.

(b)     During the relevant period, the defendant participated in a conspiracy among major automotive parts manufacturers, the primary purpose of which was to allocate the supply of, rig bids for, and fix, stabilize and maintain the prices of, starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems, electronic throttle bodies, ignition coils, inverters and motor generators sold to, depending on the product, Nissan, Honda Motor Company, Ltd., GM, Ford Motor Company, Toyota Motor Corporation, Chrysler Group LLC, Fuji Heavy Industries Ltd. and others, and certain of their subsidiaries, affiliates and suppliers in the United States and elsewhere. In furtherance of the conspiracy, from January 2000 to April 2008 the defendant engaged in discussions and attended meetings with representatives of other major automotive parts manufacturers. During these meetings and discussions, agreements were reached to allocate the supply of, rig bids for, and fix, stabilize, and maintain the prices, of automotive parts sold to automobile manufacturers in the United States and elsewhere. The defendant was a manager and the criminal activity involved at least five participants.

(c)     During the relevant period, certain automobile parts sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of automotive parts, as well as payments for automotive parts, traveled in interstate commerce and foreign commerce as imports into the United States. The business activities of the defendant and co-conspirators in connection with the production and sale of automotive parts that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and import trade and commerce.

(d)     The conspiratorial meetings and discussions described above took place in the United States and elsewhere, and automotive parts that were the subject of the conspiracy were sold to Nissan, Honda, GM, Ford, Toyota, and others, and certain of their subsidiaries, affiliates, and suppliers in the United States and elsewhere, by Hitachi Automotive's U.S. affiliate, Hitachi Automotive Systems Americas, Inc., which is located in the Eastern District of Michigan.

## ELEMENTS OF THE OFFENSE

5.     The elements of the charged offense are that:

(a)     the conspiracy contained in the Indictment existed at or about the time alleged;

(b)     the defendant knowingly became a member of the conspiracy; and

(c)     the conspiracy contained in the Indictment either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

## POSSIBLE MAXIMUM SENTENCE

6.     The defendant understands that the statutory maximum penalty which may be

5

imposed against him upon conviction for a violation of Section One of the Sherman Antitrust
Act is:

        (a)      a term of imprisonment for ten (10) years (15 U.S.C. § 1);

        (b)      a fine in an amount equal to the greatest of (1) $1 million, (2) twice the
gross pecuniary gain the conspirators derived from the crime, or (3) twice the gross
pecuniary loss caused to the victims of the crime by the conspirators (15 U.S.C. § 1; 18
U.S.C. § 3571(b) and (d)); and

        (c)      a term of supervised release of three (3) years following any term of
imprisonment.  If the defendant violates any condition of supervised release, the
defendant could be required to serve up to two (2) years in prison
(18 U.S.C. § 3559(a)(3); 18 U.S.C. § 3583(b)(2) and (e)(3); and United States Sentencing
Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") §5D1.2(a)(2)).

7.      In addition, the defendant understands that:

        (a)      pursuant to U.S.S.G. §5E1.1 or 18 U.S.C. § 3663(a)(3) or 3583(d), the
Court may order him to pay restitution to the victims of the offense; and

        (b)      pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to order the
defendant to pay a $100.00 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

8.      The defendant understands that the Sentencing Guidelines are advisory, not
mandatory, but that the Court must consider, in determining and imposing sentence, the
Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater
punishment than the Manual in effect on the last date that the offense of conviction was
committed, in which case the Court must consider the Guidelines Manual in effect on the last

date that the offense of conviction was committed. The parties agree there is no *ex post facto*

issue under the November 2014 Guidelines Manual. The Court must also consider the other

factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence. The defendant

understands that the Guidelines determinations will be made by the Court by a preponderance of

the evidence standard. The defendant understands that although the Court is not ultimately

bound to impose a sentence within the applicable Guidelines range, its sentence must be

reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. §

3553(a). Pursuant to U.S.S.G. §1B1.8, the United States agrees that self-incriminating

information that the defendant provides to the United States pursuant to this Plea Agreement will

not be used to increase the volume of affected commerce attributable to the defendant or in

determining the defendant's applicable Guidelines range, except to the extent provided in

U.S.S.G. §1B1.8(b).

     9.    The United States and the defendant agree to the following Guidelines

calculations:

       (a)    The November 1, 2014 edition of the Guidelines applies.

       (b)    The controlling Guideline applicable to the sole count charged is U.S.S.G.

§2R1.1.

       (c)    The Guidelines fine range is one to five percent of the volume of

commerce attributable to the defendant pursuant to U.S.S.G. §§2R1.1(b)(2) and (c)(1).

       (d)    Pursuant to the Guidelines §2R1.1(a), the base offense level is 12.

       (e)    The offense to which the defendant is pleading guilty involved

participation in an agreement to submit non-competitive bids, within the meaning of

U.S.S.G. §2R1.1(b)(1), which increases the offense level by 1.

7

2:14-cr-20559-GCS-PJK   Doc # 13   Filed 04/23/15   Pg 8 of 20   Pg ID 36

(f)     The volume of commerce attributable to the defendant within the meaning of U.S.S.G. §2R1.1(b)(2) is more than $100,000,000, which increases the offense level by 8.

(g)     The defendant was a manager pursuant to 3B1.1(b), which increases the offense level by 3.

(h)     The resulting Offense Level before any reduction for acceptance of responsibility is 24.

(i)     Based on an Offense Level of 24 and a Criminal History Category I, the Guidelines imprisonment range is 51-63 months.

10.     The United States does not oppose a two-level reduction in the defendant's adjusted offense level, based upon the defendant's prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. The United States agrees to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional one-level reduction in recognition of the defendant's timely notification of his intention to plead guilty. If the Court grants a three-level reduction for acceptance of responsibility, the defendant's Total Offense Level will be 21. Based on a Total Offense Level of 21 and a Criminal History Category I, the Guidelines imprisonment range is 37-46 months.

11.     The defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history or criminal history category could alter his offense level, if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

12.     The United States and the defendant agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the

8

United States Sentencing Commission in formulating the Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0.

13.     The United States and the defendant agree that with respect to the calculation of the advisory Guidelines range, no offense characteristics, Sentencing Guidelines factors, potential departures or adjustments as set forth in Chapters 2, 3, 4, or 5 of the Sentencing Guidelines will be raised, argued, or are in dispute that are not set forth in this Plea Agreement.

## SENTENCING AGREEMENT

14.     Pursuant to Fed. R. Crim. P. 11(c)(1)(C) and subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 18 of this Plea Agreement, the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of $20,000, payable in full before the fifteenth (15th) day after the date of judgment, a period of imprisonment of fifteen (15) months; no period of supervised release; and no order of restitution. The defendant agrees that he will not request that he be allowed to serve any part of his sentence in home detention, intermittent confinement, or community confinement. The United States will not object to the defendant's request that the Court make a recommendation to the Bureau of Prisons that the Bureau of Prisons designate that the defendant be assigned to a Federal Minimum Security Camp (or one such specific Camp as the defendant may request prior to or at the time of his sentencing) to serve his sentence and that the defendant be released following the imposition of sentence to allow him to self-surrender to the assigned prison facility on a specified date after his sentencing. The defendant understands that the Court will order him to pay a $100 special assessment pursuant to 18 U.S.C.

9

§3013(a)(2)(A) in addition to any fine imposed.  The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

15.     The United States and the defendant agree that the agreed-upon Guidelines calculations, set forth in Paragraph 9 and 10 above, result in applicable Guidelines fine and imprisonment ranges exceeding the fine and term of imprisonment contained in the recommended sentence set out in Paragraph 14 above.  Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 18 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. §5K1.1, for a downward departure from the Guidelines fine and imprisonment ranges in this case and will request that the Court impose the fine and term of imprisonment contained in the recommended sentence set out in Paragraph 14 of this Plea Agreement because of the defendant's substantial assistance in the government's investigation and prosecutions of violations of federal criminal law in the automotive parts industry.

16.     Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 18 of this Plea Agreement, and prior to sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's cooperation and his commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

17.     The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 14 of this Plea Agreement.

(a)     If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 17(b) below, will be rendered void.  Neither party may withdraw from this Plea Agreement, however, based on the type or location of the prison facility to which the defendant is assigned to serve his sentence.

(b)     If the Court does not accept the recommended sentence, the defendant will be free to withdraw his guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)).  If the defendant withdraws his plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government will not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410.  In addition, the defendant agrees that, if he withdraws his guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any Relevant Offense, as defined in Paragraph 19 below, will be tolled for the period between the date of signature of this Plea Agreement and the date the defendant withdrew his guilty plea or for a period of sixty (60) days after the date of signature of this Plea Agreement, whichever period is greater.  For a period of three (3) consecutive days following such a withdrawal of the guilty plea under this subparagraph, the United States will take no action, based upon either a Relevant Offense or any actual or alleged violation of this Plea Agreement, to revoke the defendant's release on his personal recognizance, to subject the defendant to service of process, arrest, or detention, or to prevent the defendant from departing the United States.

11

## DEFENDANT'S COOPERATION

18.     The defendant will cooperate fully and truthfully with the United States in the prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of automotive parts as defined in paragraph 4(a) of this Plea Agreement; and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding. The full, truthful, and continuing cooperation of the defendant will include, but not be limited to:

(a)     producing in the United States and at other mutually agreed-upon locations all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of the defendant, that are requested by attorneys and agents of the United States in connection with any Federal Proceeding;

(b)     making himself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false

12

statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses;

       (d)    otherwise voluntarily providing the United States with any material or information not requested in (a) - (c) of this paragraph and not protected under the attorney-client privilege or work-product doctrine that he may have that is related to any Federal Proceeding; and

       (e)    when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401–402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*).

## GOVERNMENT'S AGREEMENT

19.    Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 18 of this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, the United States agrees that it will not bring further criminal charges against the defendant for any act or offense committed before the date of the signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of certain automotive parts ("Relevant Offense"). The nonprosecution terms of this paragraph do not apply to (a) any acts of perjury or subornation of perjury (18 U.S.C. §§ 1621–1622), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503 *et seq.*), contempt (18 U.S.C. §§ 401–402), or conspiracy to commit such offenses; (b) civil matters

of any kind; (c) any violation of the federal tax or securities laws or to conspiracy to commit such offenses; or (d) any crime of violence.

20.     The United States agrees that when the defendant travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject the defendant to arrest, detention, or service of process, or to prevent the defendant from departing the United States. This paragraph does not apply to the defendant's commission of perjury or subornation of perjury (18 U.S.C. §§ 1621–1622), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401–402), or conspiracy to commit such offenses.

21.     (a)     Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 18 of this Plea Agreement, and upon the Court's acceptance of the defendant's guilty plea and imposition of sentence in this case, the United States agrees not to seek to remove the defendant from the United States under Sections 238 and 240 of the Immigration and Nationality Act, 8 U.S.C. §§ 1228 and 1229a, based upon the defendant's guilty plea and conviction in this case, should the defendant apply for or obtain admission to the United States as a nonimmigrant (hereinafter referred to as the "agreement not to seek to remove the defendant"). The agreement not to seek to remove the defendant is the equivalent of an agreement not to exclude the defendant from admission to the United States as a nonimmigrant or to deport the defendant from the United States. (Immigration and Nationality Act, § 240(e)(2), 8 U.S.C. § 1229a(e)(2)).

(b)     The Antitrust Division of the United States Department of Justice has consulted with United States Immigration and Customs Enforcement ("ICE") on behalf

of the United States Department of Homeland Security ("DHS").  ICE, on behalf of DHS and in consultation with the United States Department of State, has agreed to the inclusion in this Plea Agreement of this agreement not to seek to remove the defendant. The Secretary of DHS has delegated to ICE the authority to enter this agreement on behalf of DHS.

(c)     So that the defendant will be able to obtain any nonimmigrant visa that he may need to travel to the United States, DHS and the Visa Office, United States Department of State, have concurred in the granting of a nonimmigrant waiver of the defendant's inadmissibility.  This waiver will remain in effect so long as this agreement not to seek to remove the defendant remains in effect.  While the waiver remains in effect, the Department of State will not deny the defendant's application for a nonimmigrant visa on the basis of the defendant's guilty plea and conviction in this case, and DHS will not deny his application for admission as a nonimmigrant on the basis of his guilty plea and conviction in this case.  This nonimmigrant waiver only applies to applications for entry as a nonimmigrant.  DHS does not agree to waive any grounds of removability on an application for an immigrant visa.

(d)     This agreement not to seek to remove the defendant will remain in effect so long as the defendant:

(i)     acts and has acted consistently with his cooperation obligations under this Plea Agreement;

(ii)     is not convicted of any felony under the laws of the United States or any state, other than the conviction resulting from the defendant's guilty plea

15

under this Plea Agreement or any conviction under the laws of any state resulting

from conduct constituting an offense subject to this Plea Agreement; and

(iii)     does not engage in any other conduct that would warrant his

removal from the United States under the Immigration and Nationality Act.

The defendant understands that should the Antitrust Division become aware that the

defendant has violated any of these conditions, the Antitrust Division will notify DHS.

DHS will then determine, in consultation with the Antitrust Division, whether to rescind

this agreement not to seek to remove the defendant.

(e)     The defendant agrees to notify the Assistant Attorney General of the

Antitrust Division should the defendant be convicted of any other felony under the laws

of the United States or of any state.

(f)     Should the United States rescind this agreement not to seek to remove the

defendant because of the defendant's violation of a condition of this Plea Agreement, the

defendant irrevocably waives his right to contest his removal from the United States

under the Immigration and Nationality Act on the basis of his guilty plea and conviction

in this case, but retains his right to notice of removal proceedings.

22.     If the defendant meets all of the terms and conditions set forth in this Plea

Agreement, the Antitrust Division agrees that it will advise the Office of Enforcement

Operations ("OEO") in the Criminal Division of the Department of Justice that it has no

objection to the defendant's application to transfer to Japan to serve his sentence pursuant to the

international prisoner transfer program. The defendant acknowledges and understands, however,

that, if he is eligible and applies for transfer, the transfer decision rests in the sole discretion of

OEO and that the position of the Antitrust Division is neither binding nor determinative of the

16

positions of other federal agencies or on the final transfer decision of OEO.  The defendant

further understands that in addition to OEO, federal law and the underlying transfer treaties

require that the foreign government must also approve the transfer.

## REPRESENTATION BY COUNSEL

23.     The defendant has reviewed all legal and factual aspects of this case with his

attorney and is fully satisfied with his attorney's legal representation.  The defendant has

thoroughly reviewed this Plea Agreement with his attorney and has received satisfactory

explanations from his attorney concerning each paragraph of this Plea Agreement and

alternatives available to the defendant other than entering into this Plea Agreement.  After

conferring with his attorney and considering all available alternatives, the defendant has made a

knowing and voluntary decision to enter into this Plea Agreement.

## VOLUNTARY PLEA

24.     The defendant's decision to enter into this Plea Agreement and to tender a plea of

guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises,

or representations other than the representations contained in this Plea Agreement.  The United

States has made no promises or representations to the defendant as to whether the Court will

accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

25.     The defendant agrees that, should the United States determine in good faith,

during the period that any Federal Proceeding is pending, that the defendant has failed to provide

full, truthful, and continuing cooperation, as defined in Paragraph 18 of this Plea Agreement, or

has otherwise violated any provision of this Plea Agreement, the United States will notify

counsel for the defendant in writing by personal or overnight delivery, email, or facsimile

transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant for any Relevant Offense, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

26.    The defendant understands and agrees that in any further prosecution of him resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against him. In addition, the defendant unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

27.    The defendant agrees to and adopts as his own the factual statement contained in Paragraph 4 above. In the event that the defendant breaches this Plea Agreement, the defendant agrees that this Plea Agreement, including the factual statement contained in Paragraph 4 above, provides a sufficient basis for any possible future extradition request that may be made for his return to the United States to face charges either in the Indictment referenced in Paragraph 2 of this Plea Agreement or in any related indictment. The defendant further agrees not to oppose or

contest any request for extradition by the United States to face charges either in the Indictment referenced in Paragraph 2 of this Plea Agreement or in any related indictment.

## ENTIRETY OF AGREEMENT

28.     This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case.  This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

29.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

30.     A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.


DATED:____4 - 22 - 15_____


BY:_____          BY:_____
    TAKASHI TOYOKUNI                   Mark C. Grundvig, Assistant Chief
    Defendant                         Rebecca D. Ryan
                                       Eric M. Meiring
    _____              Diana Kane
    Pamela Marple                     Jason Jones
    Counsel for Takashi Toyokuni      Trial Attorneys, Antitrust Division
    Greenberg Traurig, LLP            U.S. Department of Justice
    2102 L Street, NW                 450 5th Street NW, Suite 11300
    Washington, D.C. 20037            Washington, D.C. 20530
    (202) 331-3174                    (202) 305-1878